UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JUSTIN HAMMOND,<br>Plaintiff,<br>v.<br>MITCHELL TIPTON,<br>Defendant. | Case No. 2:22-CV-002-GSL |

**OPINION AND ORDER**

Plaintiff filed his complaint on January 6, 2022, but amended his Complaint on March 23, 2022, and alleged violations of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. [DE 1; DE 6]. Plaintiff also filed tort claims under Indiana law, but those claims were abandoned by Plaintiff, and dismissed by the Court, at the hearing on August 4, 2026. [*Id.* at ¶¶ 33, 34; DE 101]. Defendant moved for summary judgment at [DE 85], to which Plaintiff responded at [DE 95]. Defendant replied at [DE 96]. Having reviewed the briefing, the parties' respective Statements of Material Facts, and the video evidence, the Court is ready to rule.

*Background*

As a preliminary note, N.D. Ind. L.R. 56-1(b) requires that the opposing party provides a citation to evidence supporting each disputed fact in the moving party's statement of material facts. Therefore, where Plaintiff provided a qualified response to Defendant's Statement of Material Fact but did not provide evidence supporting the alleged dispute, the statement will be deemed admitted.[1] *See Smith v. Nexus RVs, LLC*, 468 F. Supp. 3d 1012, 1029 (N.D. Ind. 2020)

[1] An example of a qualified response can be found at [DE 95-1 ¶ 6], where Plaintiff responds "[a]dmit that Defendant Tipton testified to this."

(citing *Mayes v. City of Hammond*, 442 F. Supp.2d 587, 596 (N.D. Ind. 2006)) ("[I]t is the function of a court … to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement.). With this in mind, the Court turns to a recitation of the facts.

The following facts are agreed upon by the parties. This case arises out of the events occurring on December 11, 2021, where Plaintiff was attending a birthday party. [DE 95-1 ¶2]. On that evening, the East Chicago Police Department received calls regarding shots fired in the area where the birthday party was being held. [*Id.* at ¶4]. Defendant was one of the officers who responded to this call. [*Id.* at ¶5]. When Defendant and other officers arrived on scene, the area was dark.[2] [*Id.* at ¶6; DE 95-4, 70:21-25; DE 95-7, 90:6-8]. While canvassing the area, Defendant heard gunshots being fired in the alley behind the residence where the birthday party was occurring. [DE 95-1 at ¶¶9, 11]. As Defendant and the other officers approached the residence, gunshots were continually fired.[3] [*Id.* at ¶ 12]. What happened next is disputed by the parties.

Defendant alleges that upon entering the backyard area of the residence he observed two men, one of which was Plaintiff, holding handguns and shooting into the rear of the home. [*Id.* at ¶¶14, 15, 17]. Defendant allegedly identified himself and gave multiple commands for the two

---

[2] Plaintiff responds "[a]dmit that Defendant Tipton testified to this" to the statement of material fact that Defendant Tipton and the other officers arrived, the area was dark, with many lights having been destroyed by gunshots, and visibility was poor. [DE 95-1 ¶ 6]. Plaintiff did not deny this fact, nor did he provide any evidence disputing it. Furthermore, in the evidence provided by Plaintiff, both Plaintiff and Plaintiff's witness Shamar Davis agreed that the events at issue here occurred at night and while it was dark. [DE 95-4, 70:21-25; DE 95-7, 90:6-8].

[3] Plaintiff again responds "[a]dmit that Defendant Tipton testified to this" to the statement of material fact that as Defendant Tipton and other officers approached the residence, gunshots were continually fired. [DE 95-1 ¶ 12]. Plaintiff did not deny this fact, nor did he provide any evidence disputing it.

men, including Plaintiff, to drop the guns. [*Id.* at ¶18]. After this command, the man with Plaintiff allegedly ran into the house, while Plaintiff remained outside ignoring commands from Defendant to drop his gun. [*Id.* at ¶¶19, 20]. Plaintiff then allegedly raised his weapon and pointed it directly at Defendant. [*Id.* at ¶21]. Because Defendant allegedly feared for his life and the lives of his fellow officers, Defendant shot Plaintiff. [*Id.* at ¶¶22, 23]. After being shot, Plaintiff was allegedly pulled into the house and the door was closed by a female. [*Id.* at ¶24].

Plaintiff's version of events is contrary to Defendant's version. Plaintiff and his witnesses allege that he was not holding a gun at any point on December 11, 2021. [DE 95-1 ¶¶14-17; DE 95-2 ¶ 1]. Instead, it is alleged that Plaintiff's brother and nephew brought their guns outside to show Plaintiff and each other. [DE 95-2 at ¶3; DE 95-7 at 57:24-58:10]. Plaintiff's brother and nephew then fired their guns into the ground for a couple seconds while Plaintiff sat at a table 5-10 feet away, not participating in the firing of the weapons. [DE 95-1 ¶¶15; DE 95-2 at ¶¶6-9; DE 95-4 at 69:17-70:9; DE 95-6 at 70:11-12; DE 95-7 at 58:15-17, 69:11-13, 70:4-14]. After firing the weapons into the ground, Plaintiff, his brother, and his nephew all headed back into the house. [DE 95-2 at ¶11; DE 95-6 at 70:16-23].

At the time that Plaintiff saw the lights from Defendant and the other officers coming from the side of the house, Plaintiff's nephew was already inside the house, Plaintiff's brother was in the doorway, and Plaintiff was right behind them. [DE 95-2 at ¶13; DE 95-6 at 74:7-23]. Plaintiff pushed his brother, who was in the doorway, into the house and was attempting to enter the doorway when he was shot by Defendant. [DE 95-2 at ¶ 15; DE 95-6 at 74:19-23]. Plaintiff and his witnesses allege that Defendant did not announce himself or the other officers, nor did he give any commands prior to shooting Plaintiff. [DE 95-2 at ¶¶14, 18]. Plaintiff and his witnesses further allege that prior to being shot, Plaintiff was not in possession of a weapon at all, and did

not "threaten Defendant Tipton by facing him and the other East Chicago Police Officers 'shoulders square with the uniform and' point a gun at Defendant Tipton." [*Id.* at ¶¶16, 17]. Plaintiff states that in the act of running into the house, Plaintiff turned his body to the right, exposing only the right side of his body to Defendant, where he was shot. [*Id.*; DE 95-4 at 83:1-85:19]. Plaintiff further alleges that given the positioning of the three men at the time Plaintiff was shot, it was "impossible for Defendant to have seen [Plaintiff's brother] and [nephew] armed with guns before shooting the Plaintiff." [DE 95-2 at ¶19; DE 95-4 at 78:9-21]. Plaintiff was never charged or otherwise arrested for the events occurring on December 11, 2021. [*Id.* at ¶26].

Plaintiff filed his complaint on January 6, 2022, but amended his Complaint on March 3, 2022, and alleged violations of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. [DE 1; DE 6]. However, the parties only briefed the excessive force claim under the Fourth Amendment, and did not discuss or argue the Fourteenth Amendment excessive force claim. A police officer's use of deadly force on a suspect is a seizure within the meaning of the Fourth Amendment. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018) (citing *Scott v. Edinburg*, 346 F.3d 752, 755 (7th Cir. 2003). On the other hand, a pretrial detainee who has not yet had a probable cause hearing is typically required to bring his excessive force claim under the Fourteenth Amendment, although, the circuit has not had much opportunity to explore the line between the Fourth and Fourteenth Amendments in those circumstances. *Raddant v. Douglas Cnty.*, 170 F.4th 583, 589-590 (7th Cir. 2026) (citing *Forrest v. Prine*, 620 F.3d 739, 743 (7th Cir. 2010)). Due to the parties' briefing, the relevant caselaw, and the specific facts of this case, the Court will analyze Plaintiff's excessive force claim under the Fourth Amendment.

*Legal Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1258 (7th Cir. 2025). Facts are deemed "material" when they "might affect the outcome of the suit under the governing law," and a dispute is considered "genuine" when the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Osborn*, 126 F.4th at 1258 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence "which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020). While the facts are construed in the light most favorable to the nonmoving party, the nonmoving party must nonetheless present sufficient evidence to place his "'version of events' beyond the level of mere 'speculation or conjecture.'" *Osborn*, 126 F.4th at 1258 (quoting *Est. of Biegert ex rel. Biegert v. Molitor*, 968 F.3d 693, 701 (7th Cir. 2020)).

When analyzing a motion for summary judgment, the Court need only consider the cited materials and need not search the record for other evidence. Fed. R. Civ. P. 56(c)(3). The Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the

summary judgment motion before them. *Davis v. United States*, 400 F. Supp. 3d 745, 747 (S.D. Ind. 2019) (citing *Grant v. Trs. of Ind. Univ*., 870 F.3d 562, 573 (7th Cir. 2017)). *See DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record.").

*Discussion*

I. Excessive Force

Defendant argues that Plaintiff's excessive force claim must fail as a matter of law. [DE 86, Page 3]. The Court agrees with much of the caselaw cited by Defendant, including that when a police officer's actions are "objectively reasonable in light of the facts and circumstances confronting them" from the perspective of a reasonable officer, the officer's actions do not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* "Determining whether the force used to affect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *United States v. Place,* 462 U.S. 696, 703 (1983)).

Defendant analogizes this case to *Muhammed v. City of Chicago*. [DE 86 at 4]; *see Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002). In *Muhammed*, the plaintiff robbed a bank and fled on foot when he was spotted by officers. *Id.* at 682. The officers

attempted to stop and question the plaintiff, but the plaintiff pointed a gun at them. *Id.* Fearing for their life, one of the officers fired two shots and hit plaintiff, which caused him to fall to the ground. *Id.* While on the ground, the plaintiff again pointed a gun at the officers, so the officer shot the plaintiff two more times. *Id.* The plaintiff succumbed to his injuries at the scene. *Id.*

Defendant argues *Muhammed* is similar to the case at bar because Defendant responded to dangerous circumstances which he had probable cause to investigate, and like the *Muhammed* plaintiff, Plaintiff and others at the scene met Defendant with their guns drawn and pointed at officers. [DE 86 at 5]. Notably, while Defendant's deposition testimony states only that Plaintiff pointed his weapon at Defendant, in his summary judgment briefing, Defendant appears to argue that Plaintiff and "others at the scene" had "their guns drawn and pointed at police." [*Id.*]. *See* [DE 95-5 at 51:7-16; 57:18-58:19; 62:4-12; 67:21-24; 69:10-19]. Defendant argues that therefore, it was objectively reasonable for Defendant and the officers with him to fear for their lives in the exigent circumstances presented. [DE 86 at 5].

Plaintiff responds that *Muhammed* is not analogous, because Plaintiff disputes ever having or pointing a gun at Defendant. [DE 95, Page 8]. Plaintiff "disputes the core fact" that he ever had a gun or posed a threat, which his eyewitness corroborates. [*Id.*]. Plaintiff argues that the "factual predicate" which made *Muhammed* appropriate for summary judgment does not exist in this case, because here, there lacks "uncontradicted weapons-pointing," and instead, Plaintiff disputes ever having or pointing a weapon. [*Id.*].

The Court agrees. In *Muhammed* it was undisputed that the plaintiff threatened the officers with a gun before the officer fired the first round of shots. *Muhammed v*, 316 F.3d at 683. Here, Plaintiff and his witnesses dispute Defendant's version of the facts, including that

Plaintiff ever had or pointed a gun at Defendant. This fact makes *Muhammed* distinguishable from the case at bar.

Furthermore, in *Muhammed*, the plaintiff's estate argued that the second round of shots fired by the officer could perhaps be viewed as excessive force because the plaintiff was either not aiming a gun at the officers at that point, or was incapacitated by the first set of shots. *Muhammed,* 316 F.3d at 683. The court found that because the plaintiff failed to identify any specific eyewitness testimony that contradicted the officer's testimony, that summary judgment was appropriate. Here, not only does Plaintiff dispute ever having or pointing a gun at Defendant, but one of Plaintiff's witnesses also testified that Plaintiff was never holding a gun or aiming a weapon at Defendant. [DE 95-1 ¶¶14-17; DE 95-7 at 89:19-20,101:17-21]. In fact, Plaintiff's brother testified that Plaintiff never shot a gun at all that evening. [DE 95-6 at 70:11-12]. For these reasons, the Court is unpersuaded that *Muhammed* is analogous.

Applying *Graham*, Defendant's actions must be judged by the standard of whether his conduct in shooting Plaintiff was "objectively reasonable in light of the facts and circumstances" confronting him, viewed from the perspective of a reasonable officer. [DE 96 at 2]. Defendant, citing his deposition testimony, asserts that he saw Plaintiff holding a gun, identified himself as an officer, repeated commands to drop the weapon, and watched Plaintiff raise the gun he was holding to point it directly at him. [DE 96 at 3]. Defendant argues that it is "undisputed that [he] was presented with a situation where he could reach an objectively reasonable conclusion" that his life, and lives of the other officers, were at risk. [*Id.* at 4]. But Defendant's arguments, and the paragraphs of Defendant's Statement of Material Facts which describe the shooting, are supported only by Defendant's deposition. [DE 95-1 ¶¶4-23]. Plaintiff disputes many of these facts. [*Id.* at ¶¶13-23].

In Plaintiff's version, when Defendant fired at him, Plaintiff's nephew was already in the house out of sight, Plaintiff's brother was in the doorway of the house, and Plaintiff was right behind his brother with his body slightly turned to the right in the act of running. [DE 95-1 ¶ 14; DE 95-2 ¶¶ 13, 15, 20; DE 95-4 at 83:1-85:19]. While Plaintiff stated he was unsure where the guns were when his brother and nephew had entered the house, his nephew testified they were holding the guns inside the house, making it impossible for Defendant to have seen the weapons. [DE 95-1 ¶14; DE 95-2 ¶ 19]. Further, even if Plaintiff did not know specifically where the guns were, Plaintiff testified that he was at no point holding a gun, he did not turn to face Defendant to raise a weapon directly at him, and that instead, he had his back turned to Defendant while fleeing. [DE 95-1 ¶¶17-22; DE 95-2 ¶¶16, 17]. The testimony of Plaintiff's witnesses further supports this narrative. [DE 95-2 ¶¶16, 17].

Defendant repeatedly emphasizes Plaintiff's use of "self-serving testimony" to support his version of the facts to describe the shooting. However, depositions are entirely appropriate for use by the non-moving party to oppose a summary judgment motion, and Defendant's argument is supported only by his deposition testimony, the same type of evidence.[4] [DE 96 at 1-2].

Defendant further argues that Plaintiff seeks to "muddy the waters" by attempting to turn this case into a debate as to whether Plaintiff had a gun before being shot. [DE 96 at 4]. Despite

[4] The summary judgment rule itself contemplates that parties may submit deposition testimony as evidence for purposes of determining whether a genuine issue of material fact exists. *See Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003) (citing Fed. R. Civ. P. 56(c)) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). *See also Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("Deposition testimony… by [its] nature [is] self-serving. As we have repeatedly emphasized over the past decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."); *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994) (to ward off the grant of a summary judgment motion, the plaintiff can present deposition testimony demonstrating the existence of a genuine issue of material fact).

Defendant's argument to the contrary, the factual dispute regarding whether Plaintiff was holding a gun is quite relevant to the standard before the Court, because the Court must analyze whether Defendant's actions were "objectively reasonable in light of the facts and circumstances confronting [him]…". *Graham*, 490 U.S. at 396-97.

The parties agree that the East Chicago Police Department received calls regarding shots fired in the area where the birthday party was being held, and that it was dark when Defendant and the other officers arrived on scene. [DE 95-1 ¶¶4, 6]. The parties also agree that while canvassing the area, Defendant heard gunshots being fired in the alleyway behind the residence where the birthday was occurring, and that during their approach to the house, Defendant and the other officers heard gunshots being continually fired. [*Id.* at ¶¶9, 11-12].

As previously pointed out, Plaintiff and Plaintiff's witnesses dispute the remainder of Defendant's version of events. Ignoring the factual disputes regarding the circumstances immediately preceding the shooting, the undisputed facts–the use of gunfire in a dimly lit residential area, and Defendant hearing gunshots being fired while approaching the residence–involve circumstances occurring before Defendant saw Plaintiff or either of the witnesses, making the conclusion that his life was in danger uncertain. Significantly, Defendant provides no caselaw supporting the argument that he was reasonable in his conclusion based upon only the few undisputed facts. [DE 96 at 2-5].

Viewing the facts in light most favorable to Plaintiff, as the Court must at the summary judgment stage, it is not clear whether it would not have been "objectively reasonable in light of the facts and circumstances" from the perspective of a reasonable officer for Defendant to view Plaintiff as an imminent threat of death or serious bodily injury to which Defendant could reasonably react with deadly force. This conclusion is supported by the fact that police are

typically not entitled to shoot fleeing suspects, as Plaintiff alleges he was, except to end imminent danger to the public, but that is not a circumstance present here. *Chriswell v. O'Brien*, 570 Fed. Appx. 617, 618 (7th Cir. 2014); *see Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014). *See also Smith v. Finkley*, 10 F.4th 725, 736 (7th Cir. 2021) ("Under [*Tennessee v.*] *Garner*, an officer who uses deadly force on a fleeing suspect violates the Fourth Amendment."); *Rincon v. United States*, 2012 U.S. Dist. LEXIS 76301, at *14 (N.D. Ind. 2012) (citing *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993)) ("The Court found that since the suspect started to flee, the threat had dissipated—albeit just an instant before—such that a jury would have to resolve whether the officer's actions were justified.").

"Where the parties present two vastly different stories—as they do here—it is almost certain that there are genuine issues of material fact in dispute." *Payne v. Pauley*, 337 F.3d 767, 770 (2003). In this case, Plaintiff's "account is not based on speculation, intuition, or rumor." *Id.* at 773. Plaintiff has submitted a "detailed factual account of the incident based upon his firsthand" knowledge and the firsthand knowledge of two witnesses. *Id.* Plaintiff's facts directly conflict with the facts presented by Defendant. Where the material facts specifically averred by one party contradict the facts averred by a party moving for summary judgment, the motion must be denied. *Payne*, 337 F.3d at 773 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court is presented with dramatically divergent accounts of what occurred on the evening that Plaintiff was shot, and the only evidence cited to support either account is deposition testimony. The Court cannot make a credibility determination to resolve the factual disputes at issue here, which makes summary judgment, on these facts, inappropriate.

II. Qualified Immunity

Here again, the Court largely agrees with the standard cited by Defendant, that to ascertain whether a law enforcement officer is entitled to qualified immunity from civil liability in a § 1983 excessive force claim, the Court must evaluate: (1) whether the officer's conduct violated plaintiff's Fourth Amendment right; and (2) whether the right was clearly established at the time of the alleged violation, and that the Court is to analyze claims of excessive force, including deadly force, under the Fourth Amendment's objective reasonableness standard. [DE 85 at 5]. However, the Court disagrees that this case is factually analogous to *Sanzone v. Gray*, as Defendant suggests. [*Id.* at 5-6]; *see Sanzone v. Gray*, 884 F.3d 736, 739 (7th Cir. 2018).

There, a police officer shot the plaintiff after the plaintiff threatened to fire a "warning shot" and pointed his gun at officers gathered in the doorway of his apartment. The district court denied the police officer's summary judgment motion asserting qualified immunity, but the Seventh Circuit Court of Appeals reversed, holding that the police officer acted reasonably by shooting when the plaintiff pointed a gun at him and his fellow officers. *Sanzone*, 884 F.3d at 739-41. However, Defendant failed to highlight that the Seventh Circuit specifically noted during summary judgment briefing the plaintiff's estate never disputed the defendants' assertion, which was also supported by evidence, that "[plaintiff] brought his arm to full extension and pointed his gun directly at the officers." *Sanzone*, 884 F.3d at 739. In the case at bar, Plaintiff disputes even holding a gun, in addition to turning to face the officers and pointing the gun directly at Defendant, making *Sanzone* distinguishable.

Defendant argues that "[u]nder these particular circumstances … the particular unlit, dark area …being confronted with Plaintiff's drawn gun pointed directly at him, despite repeated commands to put the weapon down, [Defendant] used objectively reasonable force to stem and quell the particular threat of being shot by Plaintiff …". [DE 96 at 6]. However, only the dark

nature of the area is undisputed; Plaintiff disputes, with his own deposition testimony and the deposition testimony of other witnesses, that he was holding a gun, ignored commands to drop the gun, and pointed the gun directly at Defendant. [DE 95-1 ¶¶14, 16-21]. These disputes impact the first prong of the qualified immunity standard: whether Defendant's conduct violated Plaintiff's Fourth Amendment right by using unwarranted deadly force. When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citing *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)). Due to these discrete and genuine issues of material fact, Defendant's request for qualified immunity is denied.

*Conclusion*

The factual disputes in this case prevent this Court from granting Defendant's Motion for Summary Judgment. Defendant's Motion for Summary Judgment, [DE 85], is DENIED.

SO ORDERED.

ENTERED: September 11, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court